**UNITED STATES TREASURY DEPARTMENT (Internal Revenue Service) et al.**

**v.**

**John S. GARRETT.**

**Civ. A. No. 71–152.**

United States District Court,
M. D. Louisiana.

June 28, 1973.

Douglas M. Gonzales, U. S. Atty., Robert S. Leake, Asst. U. S. Atty., M. D. La., Baton Rouge, La., for United States.

Reginald J. McIntyre, Macy & Kemp, Hammond, La., for Community State Bank of Independence.

E. GORDON WEST, District Judge:

This suit began as a concursus proceeding filed in a State District Court in Baton Rouge, Louisiana. The concursus proceeding was commenced by John S. Garrett, the Speaker of the House of Representatives of the State of Louisiana, when conflicting claims were made against the accrued and prospective salary of State Representative Richard E. Cheek. Mr. Garrett, as Speaker of the House, was in charge of disbursing salaries due the members of the Legislature, when he became aware of the fact that there were four possible claims against the salary of Mr. Cheek. He immediately invoked a concursus proceeding in the State Court and deposited Cheek's accrued salary in the registry of the Court and obtained leave to so deposit future salary payments as they became due. All interested persons were ordered to appear and assert whatever claim they might have against the deposited funds. Subsequently thereto the United States of America intervened as a claimant and had the case removed to this Court. The basis of its claim is two tax liens, one in the principal amount of $1,446.64 and one in the principal amount of $25,-911.58, filed against Cheek on November 4, 1969 and January 21, 1970 respectively.

The only other claimant before the Court is Community State Bank of Independence, Louisiana (hereinafter referred to as the "Bank"), who claims the sum of $13,007.00, plus accrued interest, being the balance due on a $15,000.00 loan made by the Bank to Cheek. Its claim is based on the fact that on November 4, 1969, Cheek borrowed $15,000.00 from the Bank and as security therefor, in addition to giving a promissory note therefor, assigned to the Bank his legislative salary and allowances for the last two months of 1969, all of 1970 and 1971, and for the first five months of 1972.

There are no disputed factual issues involved, and all parties have now moved for summary judgment. The only question before the Court is whether the tax liens of the United States or the assignment to the Bank creates superior claims to the funds which have been deposited in the registry of the Court.

■■■ The Bank's first contention is that the federal tax lien could not attach to any funds of Cheek until they had been disbursed to him. That is, that it would not attach to salary payments which had not actually been made to Cheek when the attachment was filed. This argument is based on the contention that until the funds are disbursed they are State funds and not subject to attachment. The Bank relies on Weinstein, Bronfin & Heller v. LeBlanc, 249 La. 936, 192 So.2d 130 (1966), which held that funds appropriated for legislative salaries, but not yet disbursed, could not be reached by State garnishment proceedings without the consent of the State. But the question of whether or not a federal tax lien can attach to accrued, unpaid salary is governed by federal and not state law. Title 26, U.S.C., § 6331 specifically provides that levy may be made upon the accrued salary of wages of federal employees and officials, and the United States Supreme Court in Sims v. United States, 359 U.S. 108, 79 S.Ct. 641, 3 L.Ed.2d 667 (1959) held that nothing in the Constitution requires that the salaries of State employees be treated any differently for federal tax purposes than the salaries of others. Also, 26 CFR § 301.6331–1 (a)(4)(ii) specifically provides that "accrued salaries, wages, or other compensation of any officer, employee, or elected or appointed official of a State or Territory, or of any agency, instrumentality or political subdivision thereof, are also subject to levy to enforce collection of any Federal tax." Thus there is no doubt but that Cheek's accrued wages—all of which have now been paid by depositing them into the registry of the Court—are subject to a federal tax lien and subsequent levy. When the federal tax liens were filed they attached immediately to all of the rights that Cheek had in his future salary and a levy upon those funds would be operative whenever the salary was earned and paid. Thus, on November 4, 1969, when the United States filed its lien in the principal amount of $1,446.64 against Mr. Cheek, this lien became operative against his legislative salary, and the Government thus acquired the right to levy against those funds as they became due. At that time those funds had not been encumbered by any prior liens or assignments and consequently the United States had a first claim to them up to the amount of their lien. No subsequent assignment could affect the rights of the United States to those funds up to the amount of the lien. Hence, the right of the United States to a first claim on the deposited funds up to the total amount of its lien of November 4, 1969 primes any claims against those funds made now by the Bank.

■■■ Subsequent to the filing of that lien, however, Cheek borrowed $15,000 from the Bank. As security for this loan he made an assignment of the legislative salary which he anticipated earning during the last two months of 1969, all of 1970 and 1971, and during the first five months of 1972. Thus, his future salary, as it accrued, became encumbered by that assignment to the extent of the unpaid balance of his loan from the Bank. This encumbrance could not,

of course, affect the Government's prior right under its lien filed earlier on the same day, November 4, 1969, that the assignment was made. On January 21, 1970, some two and one half months later, the United States filed another lien against Mr. Cheek, this time in the principal amount of $25,911.58. Levy under this lien was then attempted against Mr. Cheek's future legislative salary. But the Government was then confronted with the assignment to the Bank made on November 4, 1969. There is no question but that the Bank's assignment primes this second lien and gives the Bank a prior claim on the deposited funds, after payment to the Government under its first lien of November, 4, 1969, to the extent of the unpaid balance on the $15,000.00 loan. See Johansson v. United States, 336 F.2d 809 (CA 5—1964). The Government does not seriously quarrel with this conclusion as a general principle of law, but argues that the assignment by Cheek of his future legislative salary should be held null and void as against public policy. The Government points to McGowan v. City of New Orleans, 118 La. 429, 43 So. 40 (1907) wherein the Court held that an assignment of part of the salary of a public officer was, in that case, contrary to public policy. In the course of its opinion the Court said:

"The reason of the rule is that, if the unearned salary of one day or one month may be assigned, that of the officer's entire term may in like manner be assigned, and thus the officer deprived of the means provided for his support, and thereby the public service be impaired." (At page 40.)

The Court in McGowan recognized that there was no statutory prohibition against the assignment of the unearned salary of a public officer but simply held that Louisiana Civil Code Article 1895 created an exception to other articles which allow assignment of incorporeal rights. Civil Code Article 1895 provides:

"The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order."

But whether or not an assignment of wages is contrary to public policy must be considered on a case by case basis. In the present case this Court must certainly take cognizance of the fact that Mr. Cheek, and other State legislators, do not rely solely upon their legislative salary for support. The business of being a State legislator in Louisiana is a part-time endeavor and does not require legislators to forego other gainful employment. Consequently an assignment of a State legislator's salary does not deprive him of his means of support as was apparently found to be the case in McGowan.

Under the circumstances of this case, this Court concludes that there is nothing contrary to public policy in the assignment by Mr. Cheek of his legislative salary and allowances to the Bank as security for the loan which the Bank made to him. Therefore, when the United States filed its second lien on January 21, 1970, any right that Mr. Cheek had or would acquire in his legislative salary for the last two months of 1969, all of 1970 and 1971, and for the first five months of 1972, was subject to a first claim by the United States pursuant to its tax lien of November 4, 1969, a second claim by the Community State Bank of Independence, Louisiana, pursuant to its assignment of November 4, 1969, and a third claim by the United States pursuant to its tax lien of January 21, 1970. Thus, the motions for summary judgment filed by the United States and the Community State Bank will both be granted in part and denied in part in accordance with the views expressed herein. Judgment will be entered herein recognizing the right of the United States under its federal tax lien of November 4, 1969 to take, by first priority, out of the funds deposited in the registry of the Clerk of this Court, the sum of $1,446.64, plus penalty and interest that might be due thereon, and recognizing the right of the Community State Bank of Independence, Louisiana, to have

the second claim against the remaining funds on deposit pursuant to its assignment from Richard Cheek dated November 4, 1969, in the amount of whatever balance, plus accrued interest, might be due on the $15,000.00 loan as security for which the assignment was given, and recognizing as the third claim, the claim of the United States pursuant to its federal tax lien dated January 21, 1970, in the sum of $25,911.58, plus penalty and interest due thereon.